UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

HOLSTON BANKS, III,

    Petitioner,

v.

    No. 1:24-CV-00012-H

DIRECTOR, TDCJ-CID,

    Respondent.

## OPINION AND ORDER

Petitioner Holston Banks, III, a self-represented state prisoner, filed this petition for writ of habeas corpus under 28 U.S.C. § 2254 to challenge his conviction and 60-year sentence for burglary of a habitation. Respondent filed an answer with copies of Petitioner's relevant state-court records, arguing that the petition is untimely and, alternatively, that it is partially unexhausted and procedurally barred, and otherwise without merit. Dkt. No. 12, 13. Petitioner filed a reply. Dkt. No. 15. He also filed a motion to stay and abey his federal petition to allow him to present his unexhausted claims to the state court. Dkt. No. 14. As explained below, the Court denies Petitioner's motion to stay and concludes that the petition is untimely, partially unexhausted and procedurally barred, and without merit.

1. **Background**

A Howard County jury found Petitioner guilty of burglary of a habitation with intent to commit aggravated robbery (and with a deadly weapon) on November 9, 2018, and sentenced him to 60 years in prison. The Eleventh Court of Appeals affirmed his conviction, and the Texas Court of Criminal Appeals (TCCA) refused his petition for discretionary review. He did not file a petition for writ of certiorari in the Supreme Court.

Petitioner filed a state application for writ of habeas corpus on April 11, 2022, but the Texas Court of Criminal Appeals (TCCA) denied it on September 28, 2022 without written order on the findings of the trial court without a hearing and on the court's independent review of the record.

Petitioner filed this federal habeas action on January 19, 2024.[1] He later filed an amended petition. Dkt. No. 7. The Court understands Petitioner to challenge his conviction and sentence on these grounds:

1) His Fourth Amendment rights were violated when his DNA was taken pursuant to an invalid warrant;

2) The prosecutor withheld requested discovery until after trial began in violation of *Brady v. Maryland*;

3) Law enforcement included his photo in a suggestive photo array during the investigation and the witness did not select him;

4) The State offered or relied on false testimony when an ID-technician witness testified inconsistently with her prior report;

5) The State offered or relied on false evidence when the ID-technician witness testified inconsistently with her prior report;

6) He received ineffective assistance of counsel from his pretrial, trial, and appellate attorneys; and

7) The trial judge abused his discretion by presiding over Petitioner's case even though he was biased and had a conflict of interest.

Dkt. No. 7.

---

[1] Petitioner initiated this civil action by filing a motion for an extension of time to file a federal habeas petition. Dkt. No. 1. Because the motion included at least one ground for federal habeas relief, the Court construed the motion as a habeas petition. Ordinarily, prisoners receive the benefit of the prison-mailbox rule. *See Spotville v. Cain,* 149 F.3d 374, 378 (5th Cir. 1998) (providing that a prisoner's habeas petition is deemed to be filed when he delivers the papers to prison authorities for mailing). But here, Petitioner did not deliver his motion to the prison authorities for mailing—it was mailed by a family member from a private residential address. Thus, the papers were not filed until they were received and docketed by the Clerk on January 19, 2024.

Respondent argues that the Court should deny Petitioner's claims and dismiss the petition with prejudice because it is barred by the applicable statute of limitations. Dkt. No. 12. Alternatively, Respondent argues that some of Petitioner's claims are unexhausted and procedurally barred and the remainder fail to overcome Section 2254's relitigation bar. *Id.* Thus, Respondent argues that even if the petition were timely, Petitioner is not entitled to federal habeas relief. *Id.*

Petitioner filed a reply, in which he adds a new eighth ground for relief—a freestanding actual-innocence claim purportedly based on newly discovered evidence. Dkt. No. 15. He argues that he is "an innocent man," his case should not be time-barred, and the Court should "[a]t least remand these issues back to the trial court to reconsider." *Id.* at 14. He also contends that his actual-innocence claim constitutes cause and prejudice sufficient to overcome any procedural bars that apply to his claims. *Id.* at 9–10. And he filed a motion requesting to stay this federal action and hold his petition in abeyance so that he may present his unexhausted claims to the state court. Dkt. No. 14. The Court denies the motion to stay as futile because, as explained below, the petition is time barred, partially unexhausted and procedurally barred, and otherwise without merit.

2.   **Discussion**

The Court has reviewed Petitioner's pleadings, Respondent's answer, and the state court records submitted by Respondent. The Court finds that an evidentiary hearing is not necessary to resolve the instant petition. *See Young v. Herring*, 938 F.2d 543, 560 n.12 (5th Cir. 1991) (explaining that "a petitioner need not receive an evidentiary hearing if it would not develop material facts relevant to the constitutionality of his conviction").

A. **Petitioner's claims are time barred.**

i. **Statute of Limitations**

Petitioner's petition is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA establishes a one-year limitation on filing federal habeas corpus petitions. Specifically, 28 U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court. The limitation period shall run from the latest of —
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

ii. **Relevant Timeline**

It is undisputed that Petitioner's conviction became final on September 20, 2021, when his time for filing a petition for writ of certiorari expired. Thus, absent any tolling, Petitioner's federal petition was due one year later, on September 20, 2022. Petitioner's state habeas application was properly filed and tolled the limitations period for 171 days, making his federal petition due on March 10, 2023. But Petitioner did not file his federal petition until January 19, 2024—more than ten months late.

### iii. Equitable Tolling

In "rare and exceptional circumstances," the doctrine of equitable tolling may preserve a petitioner's claims when the strict application of the statute of limitations would be inequitable. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *Larry v. Dretke*, 361 F.3d 890, 896–97 (5th Cir. 2004). Equitable tolling does not apply when an applicant has "failed to diligently pursue his rights." *Larry*, 361 F.3d at 897. Additionally, the Petitioner must show that "some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Fla.*, 560 U.S. 631, 649 (2010).

Petitioner acknowledges that his petition was filed after the expiration of the limitation period. He argues that he should be entitled to equitable tolling because his typewriter was stolen, his research was hindered by multiple prison lockdowns, and his legal work was misplaced or inaccessible during transfers between prison units. Dkt. No. 7 at 12–15.

Petitioner has not shown that the strict application of the statute of limitations would be inequitable. As explained by Respondent, the conditions Petitioner complains of—difficulty obtaining records, prison lockdowns, and transfers between units—are common parts of prison life and not extraordinary circumstances that warrant equitable tolling. *See, e.g., Brown v. Dretke*, 3:02-CV-1186-R, 2004 WL 60266, at *2 (N.D. Tex. 2004); *Ford v. Stephens*, No. 4:13-CV-661-C, 2013 WL 5813013, at *3 (N.D. Tex. Oct. 29, 2013); *United States v. Cockerham*, 2012 WL 12867870, at *2 (W.D. Tex. Aug. 27, 2012) ("Transfers to other facilities resulting in separation from legal papers are not rare and extraordinary and do not warrant equitable tolling.").

Moreover, Petitioner has not shown the required diligence. He did not file his state habeas application until more than half of his one-year federal limitations period had lapsed.

*See Stroman v. Thaler*, 603 F.3d 299, 302 (5th Cir. 2010). And although he had only five months of his one-year limitation period remaining, he waited more than fifteen months after the denial of his state habeas application before initiating this habeas action and asking for an extension of time.

Under these circumstances, the Court concludes that Petitioner has failed to demonstrate that he diligently pursued his rights or that any extraordinary circumstance stood in the way of his timely filing. Petitioner is not entitled to equitable tolling.

### iv. Actual Innocence

"The Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review." *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009); *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003) (collecting cases). However, a credible claim of actual innocence may serve as a gateway to overcome impediments such as procedural default or the expiration of the statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

This rule, also known as the "fundamental miscarriage of justice exception," is based on equitable principles to ensure that "constitutional errors do not result in the incarceration of innocent persons." *Id.* at 392 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). Importantly, innocence here refers to factual innocence and not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

"The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v.*

*Bell*, 547 U.S. 518, 538 (2006) (citing *Schlup v. Delo*, 513 U.S. at 329). The Supreme Court has emphasized that this exception applies to a very narrow category of cases. *McQuiggin*, 569 U.S. at 394–95. To present a credible claim of actual innocence, a petitioner must present new evidence that was unavailable at the time of trial, based on which it is more likely than not that no reasonable juror would have convicted the petitioner. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (explaining that, to be credible, a claim of actual innocence must be based on reliable evidence not presented at trial).

Here, Petitioner has failed to make a credible showing of actual innocence. Although he states that his innocence claim is based on newly discovered evidence, he fails to offer or identify any evidence that is newly discovered. Indeed, all of the records he attaches to or references in his reply brief are materials that were available during the original proceedings. Dkt. No. 15 at 70–83. Essentially, he restates his first seven grounds for relief and argues that these alleged errors "had an effect on the judgment," and without them, "[t]he results of the proceeding would have been different for sure." *Id.* at 14. At most, he attempts to show that the jury could have found reasonable doubt—based only on information that was presented at trial or was available at the time of trial. For example, Petitioner asserts that if his attorney had better prepared and investigated, he could have proven he "was set up and innocent." Dkt. No. 15 at 64. Petitioner argues that if his attorney had cross-examined the witnesses better, he "know[s he] would have been acquitted." *Id.* But these unsupported conclusions are not enough to satisfy the demanding *Schlup* standard.

More importantly, he does not demonstrate that he is factually innocent. Petitioner asserts that "the DNA wasn't even a match. Not once in the trial did they say it was a match for my DNA." Dkt. No. 15 at 10, 58. Among other things, Petitioner attaches an

unsigned document dated April 10, 2018, which appears to be notes or excerpts of notes ostensibly drafted by an expert retained by Petitioner's counsel with court-appointed funds. Dkt. No. 15-4 at 41–47. The notes identify possible weaknesses in the State's case and suggest defensive theories or lines of questioning. But the notes are not newly discovered—they were allegedly made by Petitioner's retained expert in preparation for trial and are dated well before trial began. The expert did not testify at Petitioner's trial, but his notes were available and presumably used by Petitioner's counsel in preparing for trial and in questioning the State's witnesses. Moreover, the notes, which are unauthenticated, do not prove Petitioner's innocence or show that the DNA results were wrong. And his claim that "the DNA wasn't even a match," is inaccurate and misleading.

The forensic scientist who testified explained that DNA results are given in "likelihood ratios," rather than matches. Dkt. No. 13-15 at 60. In this case, the testing showed that Petitioner could not be excluded as a contributor, and it was "70.1 quintillion times more likely" that the DNA came from Petitioner than from an unrelated, unknown individual. *Id.* at 59.

Petitioner has failed to present any new evidence, nor has he shown that no reasonable juror would have found him guilty. Thus, he has not made a credible claim of actual innocence sufficient to overcome the application of the statute of limitations or other procedural bars. Thus, his petition must be dismissed as untimely.

**B. Petitioner's unexhausted claims are procedurally barred**

Even if Petitioner had filed his petition on time, his claims are partially unexhausted and procedurally defaulted.

8

i.  **Exhaustion and Procedural Default**

Courts may not grant habeas relief unless the petitioner first exhausts all available state remedies. 28 U.S.C. § 2254(b)(1)(A). "The exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." *Duncan v. Walker*, 533 U.S. 167, 178–79 (2001). Although unexhausted claims prevent courts from granting relief, courts may deny a petition on the merits despite the petitioner's failure to exhaust the state remedies. 28 U.S.C. § 2254(b)(2).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998), which in Texas is the TCCA. *Richardson v. Procunier*, 762 F.2d 429, 431–32 (5th Cir. 1985). More than mere presentation of claims to the high court is required. Raising a claim "in a procedural context in which its merits will not be considered" does not constitute "fair presentation"; thus, it cannot satisfy the exhaustion requirement. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). To present claims to the TCCA, a petitioner must pursue his claims through direct appeal and a PDR or through a state habeas application. *See Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990).

Additionally, if a petitioner presents new legal theories or factual claims in his federal habeas petition, then he has not met the exhaustion requirement. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (citing *Anderson v. Harless*, 459 U.S. 4, 6–7 (1982)). "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Harless*, 459 U.S. at 6 (internal citations omitted).

In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, rather than procedural. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997)). In Texas writ jurisprudence, a "denial" signifies that the state high court "addressed and rejected the merits of a particular claim," but a "dismissal" means that the court "declined to consider the claim for reasons unrelated to the claim's merits." *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997); *Barrientes v. Johnson*, 221 F.3d 741, 780 (5th Cir. 2000).

Along with the exhaustion requirement, the doctrine of procedural default provides "[a] distinct but related limit on the scope of federal habeas review." *Nobles*, 127 F.3d at 420. Federal habeas courts are barred from reviewing a question of federal law decided by a state court "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment," whether the ground is substantive or procedural. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). In Texas, the high court's dismissal of a habeas application as subsequent provides an adequate and independent state ground, barring federal review. *See Nobles*, 127 F.3d at 423.

"[A] habeas petitioner who has failed to properly present his federal constitutional claims to the state courts can still be considered to have exhausted his state remedies if the state courts are no longer open to his claim because of a procedural bar." *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004). But "the same procedural bar that satisfies the exhaustion requirement at the same time provides an adequate and independent state procedural ground to support the state judgment and thus prevents federal habeas corpus review of the defaulted claim." *Id.* A petitioner may overcome this bar only if he can show "cause for the default and actual prejudice as a result of the alleged violation of

10

federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750.

### ii. Discussion

Petitioner admits that he did not exhaust his fourth, fifth, or seventh grounds for relief. Dkt. No. 7 at 11; *see also* Dkt. No. 15 at 9 ("Yes, I know 'Now' that the issues were supposed to have been brought up and exhausted in the State Courts before taking my claim of actual innocence to the Federal Courts."). Respondent argues that Petitioner's third ground and parts of his first and sixth grounds are also unexhausted, and that all of Petitioner's unexhausted claims are procedurally barred.

As thoroughly explained in Respondent's answer, Petitioner did not properly exhaust his third, fourth, fifth, or seventh grounds for relief, and he raises new, unexhausted legal theories with respect to parts of his first and sixth grounds. Petitioner cannot return to state court to exhaust his claims because they are barred under the Texas abuse-of-the-writ doctrine. Tex. Code Crim. Proc. art. 11.07. Thus, the Court cannot review Petitioner's unexhausted claims unless Petitioner establishes cause and prejudice or actual innocence.

Petitioner has failed to demonstrate cause for his procedural default or any resulting prejudice. And as discussed above, he has not presented a credible claim of actual innocence or other fundamental miscarriage of justice sufficient to overcome the procedural bar. Thus, Petitioner's unexhausted and procedurally defaulted grounds must be denied.

### C.   Petitioner has failed to overcome AEDPA's deferential standard.

Finally, to the extent that Petitioner properly presented his claims to the state court, he has not shown that the TCCA's denial of his claims was unreasonable.

### i. Legal Standard

Section 2254 provides federal courts with an important, but limited opportunity to review a state prisoner's conviction and sentence. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) (explaining that the statute is "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions"). This statute, as amended by AEDPA creates a "highly deferential standard for evaluating state-court rulings, . . . which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam) (internal quotation marks omitted).

Once a state a state court has rejected a claim on the merits, a federal court may grant relief on that claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state-court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004). A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413

(2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (explaining that a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Federal habeas relief is precluded even when the state court's factual determination is debatable. *Id.* at 303. State-court factual determinations are entitled to a "presumption of correctness" that a petitioner may rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This "deference extends not only to express findings of fact, but to the implicit findings of the state court." *Ford v. Davis*, 910 F.3d 232, 234–35 (5th Cir. 2018).

Moreover, "federal habeas relief does not lie for errors of state law," and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Federal habeas review is reserved only as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102–03. This standard is intentionally "difficult to meet." *Id.*

Finally, federal habeas review is limited "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). In short, to overcome AEDPA's highly deferential, difficult standard, a petitioner "must

show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny . . . relief was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans v. Davis*, 875 F.3d 210, 217 (5th Cir. 2017).

### ii. Discussion

As explained by Respondent, Petitioner's first ground for relief—that his DNA was unlawfully seized pursuant to an invalid warrant signed by an unlicensed county judge—was partially presented to the state habeas court. Petitioner is not entitled to federal habeas relief on this ground. *See Stone v. Powell*, 428 U.S. 465, 494 (1976) (concluding that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial").

Additionally, although he asserts that the seizure of his DNA violated the Fourth Amendment, the admission of the DNA evidence against him is an evidentiary matter resolved on state-law grounds. And it is well established that "errors of state law, including evidentiary errors, are not cognizable in habeas corpus." *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992). Rather, federal courts may review errors of state law only if they "rise to a constitutional dimension," *id.*, and "render the trial as a whole fundamentally unfair." *Nelson v. Estelle*, 642 F.2d 903, 907 (5th Cir. 1981). Here, the state habeas court determined that DNA warrant was valid and that the county judge was authorized to sign it under state law. This Court cannot "reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68. Petitioner fails to show that the trial court committed any actual error with respect to his first ground, much less error of a constitutional dimension. The TCCA reasonably rejected this claim.

Next, Petitioner claims that the State withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). He asserts that the State wrongfully withheld information from the personnel files of the investigating officers, which could have been used to impeach the officers and "who everything that was said wasn't true." Dkt. No. 15 at 28.

To establish a Brady violation, the petitioner must prove (1) the prosecutor suppressed or withheld evidence (2) that was favorable and (3) material to the defense. *See Brady*, 373 U.S. at 87. Here, the trial court found "no evidence that the State failed to turn over exculpatory evidence." Dkt. No. 13-31 at 11. Specifically, the trial court found that although the State failed to produce the requested personnel files prior to the first day of testimony, they were produced before any investigating officer testified. *Id.* at 10–11. The trial court went on to find no evidence that there was exculpatory evidence in the personnel files, and no showing that Petitioner was prejudiced by the mid-trial production of them. *Id.* at 11. The trial court reasonably applied *Brady* to the facts of Petitioner's case, and the TCCA reasonably denied Petitioner's his claim on the trial court's findings and its own independent review. Petitioner is not entitled to habeas relief on this claim.

Finally, Petitioner alleges that he received ineffective assistance of counsel on appeal.[2] He asserts, in conclusory fashion, that his appellate counsel failed to bring up "DEADBANGWINNER" issues. *See* Dkt. No. 15 at 18, 51. The well-known standard for judging Petitioner's contentions is articulated in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Under the two-pronged *Strickland* test, a petitioner must show that counsel's performance was both deficient and prejudicial. *Id.* at 687. In the context of Section

---

[2] He also asserts that his pretrial and trial attorneys were ineffective, but he failed to exhaust these claims, so they are procedurally defaulted as discussed above.

15

2254(d), the deferential standard that must be given to counsel's representation must also be considered in tandem with the deference that must be accorded state-court decisions, which has been called "doubly" deferential. *Richter*, 562 U.S. at 105. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The trial court found that Petitioner's appellate counsel "was not defective in failing to argue a frivolous ground of appeal." Dkt. No. 13-31 at 9–10. Based on the record in this case, and as thoroughly addressed by Respondent, the state court reasonably concluded, consistent with the Supreme Court's *Strickland* standard, that Petitioner failed to show that his appellate attorney's performance was deficient or that he suffered any harm as a result. Thus, Petitioner is not entitled to federal habeas relief on his ineffective-assistance-of-counsel claim.

### 3. Conclusion

In sum, Petitioner's claims are untimely. He filed his federal habeas petition more than ten months too late, and he failed to show that the strict application of the one-year statute of limitations would be inequitable or a fundamental miscarriage of justice. But even if Petitioner's federal petition were timely, he has failed to show that he is entitled to federal habeas relief. He failed to exhaust most of his claims, and those claims are procedurally defaulted. But Petitioner raised some of his claims in his state habeas proceeding, and the TCCA rejected them on the merits. Petitioner has failed to show that the state-court's adjudication of his claims resulted in a decision contrary to clearly established federal law or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus, the Court finds that the petition should be denied.

For these reasons and based on the facts and law set forth in Respondent's answer, the Court finds Petitioner's claims should be denied.

The Court therefore orders:

(1) The petition for writ of habeas corpus is denied and dismissed with prejudice.

(2) All relief not granted is denied, and any pending motions are denied.

(3) Under Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c), this Court finds that a certificate of appealability should be denied. For the reasons set forth above and in Respondent's answer, Petitioner has failed to show that reasonable jurists would find (1) this Court's "assessment of the constitutional claims debatable or wrong," or (2) "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court will enter judgment accordingly.

Dated January 15, 2025.

_____
JAMES WESLEY HENDRIX
United States District Judge